## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARQUIS LEE RAYNER** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | Civil Action No. |
| : | |
| : | **JURY TRIAL DEMANDED** |
| **THE COUNTY OF CHESTER and** : | |
| **DETECTIVE HAROLD DUTTER** : | |
| : | |
| **Defendants** : | |

Plaintiff, Marquis Lee Rayner, through his attorneys, Joel J. Feller, and Kevin Harden, Jr., of Ross Feller Casey, LLP, hereby allege the following:

### INTRODUCTION

1. Marquis Rayner served 9 years, 10 months and 24 days of his life in prison for a crime he did not commit.

2. On February 1, 2023, the United States Court of Appeals for the Third Circuit ordered Mr. Rayner freed because "Rayner's constitutional right to due process was violated."

3. The Third Circuit held that, even when viewing the evidence in the light most favorable to the prosecution, that "no rational trier of fact could have found Rayner guilty" because "a verdict of guilt cannot rest upon pure speculation."

### JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. §1983 and 28 U.S.C. §§1331, 1343(a)(3), 1343(a)(4) and 1367(a).

5. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(a) in that the Defendants are subject to personal jurisdiction within the Eastern District of Pennsylvania and the events that gave rise to this action occurred within the Eastern District of Pennsylvania.

6. Even more, the amount in controversy in this matter exceeds $75,000.00.

## JURY DEMAND

7. Plaintiff demands a trial by jury on all issues and claims set forth in this Complaint, pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b).

## PARTIES

8. Plaintiff, Marquis Lee Rayner is a resident of the Commonwealth of Pennsylvania. He currently resides in the Eastern District of Pennsylvania and resided in the Eastern District of Pennsylvania prior to his wrongful conviction.

9. Defendant, Chester County, is, and at all times relevant to this Complaint was, a municipality in the Commonwealth of Pennsylvania and was, at all times relevant to this Complaint, officially responsible for the policies, practices and customs of the Chester County Detectives and Chester County and was the employer responsible for training and disciplining defendant Detective Harold Dutter.

10. Detective Harold Dutter, was at all relevant times to this Complaint, employed as a Detective with the Chester County Detectives and Chester County acting under color of law and within the scope of his employment pursuant to the statutes, ordinances, regulations, policies, customs and usage of defendant County of Chester. Detective Dutter is sued in his individual

capacity. Detective Dutter was assigned as a detective with the Chester County Detectives at the time of the investigation that resulted in the wrongful conviction of Mr. Rayner.

11. At all times relevant to this Complaint, defendant Dutter acted in concert and in conspiracy with other employees of defendants County of Chester to deprive Mr. Rayner of his constitutionally protected rights. Defendant Dutter and these other officers were personally involved in the unconstitutional misconduct committed against Mr. Rayner as described in this Complaint.

## FACTUAL BACKGROUND

12. On June 29, 2012, a gunman killed Dominique Williams during a home invasion gunpoint robbery.

13. A witness or witnesses described 3 men wearing t-shirts wrapped around their faces to disguise their identity entering a home and announcing a robbery. One of the men shot Mr. Williams. Another stole a clear plastic jar containing money and contraband.

14. The 3 men fled just as quickly as they charged in.

15. Not too far from the scene, police recovered a clear plastic jar and a t-shirt alleged to be used in the robbery.

16. Laboratory testing connected a fingerprint on the glass jar to Mr. Rayner's roommate and co-defendant, Dominique Lee.

17. Mr. Rayner's DNA was detected on the t-shirt.

18. Messrs. Rayner, Lee and a third man, Camren Horne, were arrested for the home-invasion killing of Mr. Williams.

19. On November 20, 2014, after a 4-day trial, a jury convicted Mr. Rayner of second-degree murder, robbery, burglary and criminal conspiracy.

20. The trial court sentenced Mr. Rayner to life imprisonment plus 19½ - 60 years in prison.

21. After exhausting his appellate rights in the Pennsylvania courts, Mr. Rayner petitioned this Court for a writ of habeas corpus, which was denied by the district court.

22. On February 1, 2023, the United States Court of Appeals for the Third Circuit reversed the district court and remanded the matter with instructions to grant the petition for a writ of habeas corpus under 28 U.S.C. § 2254, forthwith, and to release Mr. Rayner from custody on the charges underlying his appeal.

23. No appeal was undertaken by any party to the Third Circuit's decision.

24. Despite the extremely stringent standard for habeas relief under the Antiterrorism and Effective Death Penalty Act, the Third Circuit granted relief because Mr. Rayner's due process rights were violated by the Defendants.

25. The Court granted relief because no rational trier of fact, even when viewing the evidence in the light most favorable to the prosecution and Chester County, could conclude that any evidence established Mr. Rayner as the person responsible for killing Mr. Williams.

26. Specifically, the t-shirt that connected Mr. Williams to the incident contained the DNA of 3 different people, but the only identifiable sample of the 3 belonged to Mr. Rayner.

27. The other two DNA samples were not reliable enough to identify anyone but they (1) did not belong to Mr. Rayner and (2) could not exclude others.

28. The Third Circuit held that, even when viewing the facts in the light most favorable to the prosecution, there was no evidence or method for any factfinder to determine **when** Mr. Rayner's DNA was deposited on the t-shirt.

29. The Third Circuit reasoned that the other DNA could have been left on the t-shirt at any time by anyone.

30. The Third Circuit reasoned that the presence of at least two other DNA profiles on the t-shirt established that multiple people had access to, wore or had contact with the t-shirt.

31. The Third Circuit reasoned that Mr. Rayner and his co-defendant, Mr. Lee, lived together. Coincidentally, the proceeds of the robbery, the jar with Mr. Lee's fingerprint, was discovered near the t-shirt.

32. The Third Circuit summed up their reasoning in their opinion: "Lee could have easily borrowed Rayner's t-shirt sometime before the commission of the crimes." There was no evidence that disproved the possibility that defendant Lee discarded both the jar and t-shirt.

33. The Third Circuit re-affirmed the principle that "a verdict of guilt cannot rest upon **pure speculation**."

34. The Third Circuit, in reaching its conclusion, cited the **complete absence** of any evidence establishing when Rayner's DNA was left on the t-shirt and the **complete absence** of any sufficient additional incriminating evidence, circumstantial or otherwise.

35. Additionally, upon information and belief, alternative suspects known only to the Defendants were suppressed in violation of Mr. Rayner's constitutional rights.

**UNCONSTITUTIONAL MISCONDUCT IN CHESTER COUNTY INVESTIGATIONS**

36. The conviction of Mr. Rayner is the direct result of Chester County's pattern and practice of unconstitutional conduct in their investigations, including coercion of false statements from witnesses, and suppression of exculpatory and inconsistent evidence at critical stages of the criminal process, including but not limited to the acquisition of warrants, grand jury testimony and

judicial proceedings. These unconstitutional practices date back to before Mr. Rayner's conviction and have continued up to and beyond the investigation and prosecution of Mr. Rayner.

37. Throughout that same timeframe, the County of Chester had, in force and effect, a policy, practice or custom of unconstitutional misconduct in investigations, and using coercive techniques in interviews and interrogations to obtain statements, fabricating inculpatory evidence and identifications and withholding exculpatory evidence at critical stages in the criminal process.

38. At the time of the investigation and prosecution of Mr. Rayner, the County of Chester, through the Chester County Detectives and its law enforcement personnel, had a policy, practice or custom of using various techniques to unconstitutionally arrest and prosecute individuals, including coerce false statements and identifications, including, but not limited to, subjecting witnesses to needlessly prolonged interrogations and interviews, failing to record interviews and interrogations, isolation, making false promises, threatening charges for unrelated misconduct, offering assistance in unrelated criminal matters, interviewing witnesses while under circumstances that make them more susceptible to coercion, and assertions that the witness will benefit from making a statement that assists the police or suffer some sort of disadvantage, punishment or incarceration if they refuse.

39. At the time of the investigation and prosecution of Mr. Rayner, the County of Chester, through the Chester County Detectives and its law enforcement personnel, had a policy, practice or custom involving the use of various techniques to suppress and withhold exculpatory or inconsistent statements and evidence, in violation of their known duty under the United States and Pennsylvania Constitutions, including, but not limited to, making false statements to prosecutors and judicial officers about the existence of evidence, failing to provide complete documents and information to prosecutors and judicial officers, coercing witnesses into keeping

exculpatory and inconsistent information from prosecutors and judicial officers, disregarding or deleting exculpatory and inconsistent information from files, ignoring exculpatory and inconsistent information so that there is no record to be deleted from files, threatening witnesses in possession of exculpatory and inconsistent information to prevent them from coming forward to prosecutors and judicial officers and testifying and deleting information relating to or identifying key exculpatory witnesses so that they do not testify at trial.

40. These policies, practices and customs involved the use of various techniques to coerce inculpatory statements, including, without limitation, isolation, separating vulnerable suspects or witnesses from their friends and family, subjecting individuals to needlessly prolonged interviews and interrogations, making false promises, the use or threat of physical violence, authoritative assertions of a suspect's guilt, including, without limitation, confrontation with false inculpatory evidence, and providing false assurances that the suspect will benefit from making an inculpatory statement that minimizes the suspect's own involvement.

41. These policies, practices or customs also involved the use of various techniques to make false statements appear true and reliable, including, without limitation, providing a witness or suspect with details about the crime that only the perpetrator or police could know, whether through leading questions or more direct communication, taking misleading steps to make coerced statements appear as if they originated from the suspect following a lawful interrogation, selectively documenting a witness or suspect's eventual statement and not the preceding interrogation, preparation and rehearsal, and misrepresenting that a suspect's formal statement was a verbatim statement in the suspect's own words.

42. These practices are well known to the County of Chester and its policymakers through governmental investigations, complaints from lawyers and civilians, and internal police investigations, complaints lodged by the public, prior litigation and internal police investigations.

43. The misconduct described in this Complaint was committed and deliberately ignored by the County of Chester, Chester County Detectives, supervisors and the disciplinary apparatus responsible for the Chester County Detectives and Chester County employees. Mr. Rayner suffered harm because of these entities' deliberate indifference to this misconduct in training, supervision and discipline of its employees in the criminal justice system.

44. At the time of the investigation and prosecution of Mr. Rayner's case, the County of Chester had a policy, practice or custom involving the intentional use of untruthful affidavits of probable cause to support warrants that, in violation of their constitutional duties, failed to recite the totality of circumstances, including exculpatory information, and cited fabricated evidence, statements from coerced witnesses, omitted mention of credible exculpatory witness statements and facts, and mischaracterized the nature of unconstitutional conduct. The County of Chester failed to train, supervise and discipline its officers and detectives to deter or end these policies, practices and customs.

45. The misconduct described in this Complaint was tacitly, if not expressly, permitted by, committed with, or deliberately ignored when committed in the presence of County of Chester supervisors, management and policymakers.

46. These patterns of misconduct continue until today, as exemplified by Mr. Rayner's malicious prosecution, due to the deliberate indifference to these policies, practices and customs by the County of Chester and the Chester County Detectives.

47. For example, in 1990, Chester County Detectives caused Dale Brison to be arrested, convicted and illegally imprisoned for years.

48. Like Mr. Rayner, Mr. Brison's case involved unconstitutional investigative practices by law enforcement agents employed by the County of Chester, the disregard of alibi witnesses, the mishandling, disregard and misrepresentation of forensic and DNA testing to judicial officers, coercive investigative tactics and the issuance of warrants prepared by detectives that failed to contain material exculpatory information due to the misconduct of the involved investigators.

49. Mr. Brison served 4 years of an 18–42-year sentence before being exonerated.

50. The Brison case demonstrates the County of Chester's knowledge of the unconstitutional practices of its employees and its failure to appropriately implement new policies, train, supervise, reprimand, or discipline those involved with the unconstitutional practices that lead to the illegal arrest and conviction of innocent civilians.

51. At the time of the investigation and prosecution of Mr. Rayner, and for many years before and thereafter, the County of Chester, has been deliberately indifferent to the need to train, supervise and discipline police officers.

52. The disciplinary apparatus for the County of Chester's police and detective employees has failed to provide an internal disciplinary mechanism that imposes meaningful disciplinary and remedial actions in the following respects:

   a. excessive and chronic delays in resolving disciplinary complaints;
   b. a lack of consistent, rational and meaningful disciplinary and remedial actions;
   c. a failure to effectively discipline substantial numbers of officers who were found to have engaged in misconduct;
   d. the internal investigatory process fell below accepted practices and was arbitrary and inconsistent;
   e. departmental discipline, as practiced, was incident-based rather than progressive, thus, repeat violators were not penalized in proportion to the number of violations;

    f. the conduct of internal investigations demonstrated that internal affairs personnel were not adequately trained and supervised in the proper conduct of such investigations;
    g. a pattern of administrative conduct where the benefit of the doubt was given to the officer rather than the complainant;
    h. serious deficiencies in the quality of internal investigations and the validity of the departmental findings and conclusions;
    i. lack of an effective early warning system to identify, track and monitor "problem" officers;
    j. the department frequently failed to interview available eyewitnesses to incidents involving citizen complaints of misconduct, interviews that were conducted were below acceptable standards of police practice and failed to address key issues; and
    k. the department failed to acknowledge the disproportionate use of force used by police officers in the investigation of citizen complaints and failed to properly categorize the police officers' misconduct in those cases as an impermissible use of force.

53. The unlawful, intentional, willful, deliberately indifferent and reckless acts and omissions of the Defendants caused Mr. Rayner to be improperly arrested and subjected to the horrors of imprisonment, unfairly tried, wrongfully convicted and forced to serve almost 10 years in prison for a crime he did not commit.

54. As a direct result of Defendants' conduct and omissions, Mr. Rayner sustained injuries and damages, including loss of freedom for almost 10 years, loss of his youth, loss of his relationships with family members, pain and suffering, mental anguish, emotional distress, countless indignities, degradation, permanent loss of natural psychological development, loss of life's pleasures, and restrictions on all forms of personal freedom, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, voting, travel, enjoyment and freedom of speech and expression.

55. As a direct result of Defendants' conduct and omissions, Mr. Rayner sustained economic injuries and damages, including loss of income from the employment he maintained

before his wrongful arrest and incarceration and the loss of career opportunities, including future employment opportunities and wage suppression due to lack of experience.

56. As a direct result of Defendants' conduct and omissions, Mr. Rayner sustained physical injuries, including physical pain and suffering, personal injuries, physical illness and inadequate medical care.

57. As a direct result of Defendants' conduct and omissions, Mr. Rayner was forced to stand trial in a matter that violated his constitutional rights and resulted in him being convicted of a crime that he did not commit.

## COUNT I: 42 U.S.C. § 1983
### Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments

58. Defendant Dutter, acting individually with malice and knowing that probable cause did not exist to prosecute Mr. Rayner for murder, burglary, robbery and conspiracy, through his actions, testimony and deception, intentionally caused Mr. Rayner to be arrested, charged and prosecuted for those crimes, thereby violating Mr. Rayner's clearly established right, under the Fourth and Fourteenth Amendments of the U.S. Constitution, to be free of prosecution absent probable cause.

59. Defendant Dutter, acting individually, fabricated evidence or presented evidence in an intentionally misleading way and intentionally withheld and misrepresented exculpatory evidence, all of which resulted in the arrest and prosecution of Mr. Rayner without probable cause.

60. Defendant Dutter performed the acts described in this Complaint under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Rayner's clearly established constitutional rights. No reasonable police officer would have believed this conduct was lawful.

61. The prosecution finally terminated in Mr. Rayner's favor on February 1, 2023, after his charges were dismissed by the United States Court of Appeals for the Third Circuit.

62. The acts and omissions by defendant Dutter, as described in this Complaint, were the direct and proximate cause of Mr. Rayner's wrongful conviction, illegal incarceration and injuries because defendant Dutter knew, or should have known, that his conduct would result in the wrongful arrest, prosecution, conviction, and incarceration of Mr. Rayner.

63. Defendants deliberately deceived counsel and the court by concealing and suppressing relevant and material evidence and documents that showed inconsistencies in the theory of the case against Mr. Rayner and intentionally performed this deception under color of state law and with reckless disregard for the truth and with deliberate indifference to Mr. Rayner's clearly established constitutional rights. No reasonable person, as described by the Third Circuit, would have believed the evidence against Mr. Rayner or the conduct of these Defendants, was lawful.

64. The conduct described in this Complaint were the direct and proximate cause of Mr. Rayner's injuries. Defendants knew that their conduct would result in Mr. Rayner's injuries.

**COUNT II: 42 U.S.C. § 1983**
**Deprivation of Liberty without Due Process of Law and Denial of a Fair Trial by Fabricating Evidence, Withholding Material Exculpatory and Impeachment Evidence and Deliberate Deception**

65. Defendant Dutter, acting individually and within the scope of his employment with the County of Chester, deprived Mr. Rayner of his clearly established constitutional right to due process of law and to a fair trial by fabricating inculpatory evidence and deliberately using coercion and suggestion to obtain inculpatory witness statements.

66. Defendant Dutter deprived Mr. Rayner of his right to a fair trial by withholding material exculpatory and impeachment evidence from prosecutors and defense, all of which prevented Mr. Rayner from mounting a viable defense.

67. Defendant Dutter deprived Mr. Rayner of his right to a fair trial by deliberately failing to conduct a constitutionally adequate investigation, including, without limitation, by failing to pursue information from various witnesses and forensic evidence, which would have led to the true killer.

68. Defendant Dutter performed the acts described in this Complaint under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Rayner's clearly established constitutional rights. No reasonable police officer, detective or investigator would have believed this conduct, including the deliberate deception of counsel and the court, was lawful.

69. The Defendants' acts and omissions were the direct and proximate cause of Mr. Rayner's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Rayner's wrongful arrest, prosecution and incarceration.

70. In February 2023, Mr. Rayner was finally freed from prison. By that time, he had been imprisoned for almost 10 years.

71. As a direct and proximate result of Defendant's actions, Mr. Rayner was wrongly prosecuted, detained and illegally incarcerated for almost 10 years and sustained other injuries and damages as set forth in this Complaint and to be discovered in this litigation.

<u>**COUNT III: 42 U.S.C. §1983**</u>
**Municipal Liability Claim**

72. The County of Chester, by and through its final policymakers, had in force and effect during time of Mr. Rayner's wrongful arrest and conviction, and for many years preceding

and following this investigation, policies, practices and customs of unconstitutional misconduct in homicide and other criminal investigations, including, the application of an unsound definition of probable cause in criminal investigations and submissions to judicial officers, the use of coercive techniques in interviews and interrogations to obtain evidence, the fabrication of inculpatory evidence, the fabrication of incriminating statements from witnesses, suspects and arrestees by coercion, suggestion, and feeding details about the crime, including identifications, and the withholding of exculpatory evidence.

73. Final policymakers for the County of Chester, had actual or constructive notice of these practices, policies and customs, but repeatedly failed to make any meaningful investigation into charges that their employees and agents were using unconstitutional methods, policies and practices, coercive techniques in interviews and interrogations to obtain confessions, withholding exculpatory evidence, fabricating inculpatory evidence, and, particularly, fabricating incriminating statements from witnesses, suspects and arrestees by coercion, suggestion and feeding details about the crime, including identifications, and failed to take appropriate remedial and disciplinary actions to curb this pattern of misconduct.

74. Such unconstitutional municipal customs, practices and policies were the moving force behind wrongful conviction and illegal almost decade-long imprisonment of Mr. Rayner, as well as all the other injuries and damages as described in this Complaint and to be discovered in this litigation.

75. The County of Chester caused the violation of Mr. Rayner's constitutional rights. The County of Chester, with deliberate indifference, employed a custom, pattern, practice or policy of allowing officers to use their position to unconstitutionally investigate, detain, arrest, prosecute

and convict innocent individuals, and failed to train, supervise and discipline officers who engaged in such conduct.

## COUNT IV
### Civil Rights Conspiracy

76. Defendant Dutter and other Chester County employees, acting within the scope of their employment and under the color of state law, agreed among themselves and with other individuals, to act in concert to deprive Mr. Rayner of his clearly established Fourth, Fifth, Sixth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, deprivation of liberty without due process of law, to be informed of the nature and cause of the accusation, to have compulsory process for obtaining witnesses in his favor, and to a fair trial.

77. In furtherance of the conspiracy, the Defendants engaged in and facilitated numerous overt acts, including but not limited to, the following:

   a. the application of an unsound definition of probable cause in criminal investigations and submissions judicial officers;
   b. suggesting, coercing and fabricating inculpatory evidence in the form of witness statements;
   c. coercing and fabricating witness statements and false identifications;
   d. intentionally or with deliberate indifference failing to comply with their duty to disclose *Brady* and impeachment material during the pendency of the case;
   e. wrongfully prosecuting Mr. Rayner while knowing that they lacked probable cause;
   f. coercing false identifications using unconstitutional identification procedures;
   g. fabricating evidence and deliberating deceiving judicial officers.

78. These acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Mr. Rayner's injuries. Defendants knew, or should have known, that their conduct would result in Mr. Rayner's wrongful arrest, prosecution, conviction and incarceration.

## COUNT V
**State Law Claim**

79. Defendant Dutter's knowing, intentional and reckless false statements, deliberate deception and knowing application of unsound definitions of probable causes were the direct and proximate cause of the prosecution of Mr. Rayner. Defendant Dutter caused the prosecution of Mr. Rayner without probable cause and Dutter acted with malice or specific intent to injure.

80. Mr. Rayner suffered a deprivation of liberty because of the prosecution.

81. Mr. Rayner's arrest for murder was not prosecutable, hence the appeal was abandoned and the charges were withdrawn.

**WHEREFORE**, Plaintiff, Marquis Lee Rayner, seeks damages against Defendants, jointly and severally, in an amount greater than $75,000.00, including costs of suit, interest, attorney's fees, punitive/exemplary damages and such other relief as this Honorable Court deems appropriate.

**ROSS FELLER CASEY, LLP**

By: /s/ Joel J. Feller
Joel J. Feller, Esquire (ID #68873)
Kevin Harden, Jr., Esquire (ID #310164)
One Liberty Place - Suite 3400
1650 Market Street
Philadelphia, PA 19103
Tel: 215-574-2000
*Attorneys for Plaintiff*

Dated: December 29, 2023

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MARQUIS LEE RAYNER

## DEFENDANTS
COUNTY OF CHESTER, DETECTIVE HAROLD DUTTER

**(b)** County of Residence of First Listed Plaintiff: CHESTER
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: CHESTER
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
JOEL J. FELLER & KEVIN HARDEN, JR. ROSS FELLER CASEY LLP, 1650 MARKET ST, 34TH FLOOR PHILADELPHIA, PA 19103

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Sec. 1983
Brief description of cause:
DEFENDANTS' VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS CAUSING WRONGFUL CONVICTION & IMPRISONMENT

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ TBD

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: N/A
DOCKET NUMBER: N/A

DATE: 12/29/2023
SIGNATURE OF ATTORNEY OF RECORD: /S/ Joel J. Feller

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

05/2023

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: c/o Ross Feller Casey, LLP, 1650 Market Street, 34th Fl., Philadelphia, PA 19103

Address of Defendant: County of Chester, 313 West Market Street, West Chester, PA 19380

Place of Accident, Incident or Transaction: Coatesville, Pennsylvania

*RELATED CASE IF ANY:*
Case Number:_____ Judge:_____ Date Terminated_____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes [ ]   No [x]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?    Yes [ ]   No [x]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?    Yes [ ]   No [x]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?    Yes [ ]   No [x]

I certify that, to my knowledge, the within case [ ] is / [x] is not related to any now pending or within one year previously terminated action in this court except as note above.

DATE: _____    /s/ Joel J. Feller    68873
Attorney-at-Law *(Must sign above)*    Attorney I.D. # *(if applicable)*

---

**Civil** (Place a √ in one category only)

*A.  Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Wage and Hour Class Action/Collective Action
6. [ ] Patent
7. [ ] Copyright/Trademark
8. [ ] Employment
9. [ ] Labor-Management Relations
10. [x] Civil Rights
11. [ ] Habeas Corpus
12. [ ] Securities Cases
13. [ ] Social Security Review Cases
14. [ ] Qui Tam Cases
15. [ ] All Other Federal Question Cases. *(Please specify)*:_____

*B.  Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify)*:_____
7. [ ] Products Liability
8. [ ] All Other Diversity Cases: *(Please specify)*_____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Joel J. Feller, counsel of record *or* pro se plaintiff, do hereby certify:

[x] Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ] Relief other than monetary damages is sought.

DATE: 12/29/2023    /s/ Joel J. Feller    68873
Attorney-at-Law *(Sign here if applicable)*    Attorney ID # *(if applicable)*

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.