**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARQUIS LEE RAYNER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | DOCKET NO. 23-5187 |
| | : | |
| THE COUNTY OF CHESTER and | : | |
| DETECTIVE HAROLD DUTTER. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**BRIEF IN SUPPORT OF DEFENDANTS THE COUNTY OF CHESTER AND**
**DETECTIVE HAROLD DUTTERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants, the County of Chester and Detective Harold Dutter (collectively hereinafter "Defendants") by and through their attorneys Lewis Brisbois, and MacMain Leinhauser PC, hereby file the following Brief in Support of Defendants' Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) to dismiss all Counts of Plaintiff's Complaint (ECF 1).

## I.    INTRODUCTION

The present case arises from a 2014 murder and the conviction of Plaintiff by a jury, which was affirmed by both the Pennsylvania Superior Court and by two members of This Court - the (retired) Honorable Magistrate Judge Henry Perkins and the Honorable District Court Judge John Gallagher. Plaintiff was eventually successful when the Third Circuit determined that while it was a reasonable inference that Plaintiff may have been involved in the home invasion, robbery and murder for which he was charged, when evidence from the crime contained his DNA, it nevertheless found that there was insufficient evidence for the jury to have found Plaintiff guilty beyond a reasonable doubt.

1

Over the almost ten (10) years of multiple appeals, neither Plaintiff, nor any of his trial or various appellate counsel, ever alleged that the named Defendant – (retired) Chester County Detective Dutter who filed the charges against him with the review and approval of the District Attorney's Office and pursuant to a judicially approved and issued arrest warrant – had engaged in any improper conduct.  Rather, the arguments that were raised in each and every one of the appellate briefs were that certain arguments by the prosecutor at trial and some judicial rulings were unfair (claims all appellate courts rejected) and the sufficiency of the evidence to establish his guilt beyond a reasonable doubt – an argument that eventually proved successful.

Despite having had access to full  underlying files and never having made any complaints about Detective Dutter previously, Plaintiff files the present §1983 suit asserting claims of malicious prosecution claims against Detective Dutter, and a derivative *Monell* claim against the County.

As detailed below, none of the claims asserted are legally viable and must be dismissed. First, other than boilerplate allegations in both the threshold malicious prosecution claim and *Monell* claim, Plaintiff sets forth no facts to support his claims. Such boilerplate allegations do not pass muster under *Bell Atl. Co. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), especially when these "formulaic recitations" are being made for the first time and were nowhere raised in any of the multiple prior filings.  In addition, the charges were reviewed and approved by a neutral Judge who concluded that probable cause existed and issued an arrest warrant. Under well-settled case law, the approval of an arrest warrant immunizes Detective Dutter from liability. *See infra Messerschmidt v. Millender*, 565 U.S. 535 (2012); *see also infra Leary v. Cook*, No. 18-4347, 2020 U.S. Dist. LEXIS 83133 (E.D. Pa. May 12, 2020). Further, since the charges were reviewed and approved by the prosecutor before Detective Dutter

filed them, he must, at minimum, be afforded qualified immunity. *Kelly v. Borough of Carlisle,* 622 F.3d 248 (3d Cir. 2010).

Second, as to the County, Plaintiff likewise alleges a host of boilerplate "formulaic recitations" in support of his *Monell* claim, coupled with a single prior alleged wrongful conviction case against the County from over twenty (20) years prior to the present incident – in which This Court – The Honorable William Yohn - dismissed all claims against the County Defendants as without merit. These boilerplate allegations, and a single case in which NO wrongdoing was committed by the County or its officials, does not, as a matter of law, set forth a legally plausible claim under *Iqbal* and *Twombly,* nor *Monell* which requires evidence of a "a **pattern** of **prior** incidents or **knowledge of similar violations** of constitutional rights." *Cacciatore v. City of Phila.*, 2005 U.S. Dist. LEXIS 19064, *1, *6 (E.D. Pa. Sept. 1, 2005)(emphasis added).

## II.   **SUMMARY OF FACTS**

The facts underlying this case, as taken from Plaintiff's Complaint (ECF 1) and accepted as true for purposes of the present motion, and which are memorialized in multiple opinions from the underlying criminal case as attached to Defendants' Answer (ECF 12) and a matter of public record[1] are as follows:

### *The Criminal Investigation*

On June 29, 2012, Dominick Williams was killed during an invasion and burglary into his home. The three intruders wore dark t-shirts wrapped around their heads to hide their faces from identification. After the shooting of Mr. Williams, the three intruders took a clear plastic jar

---

[1] It is well-established that on a 12(c) Motion for Judgment on the Pleadings, The Court may consider matters of public record. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), *see also Wolfington v. Reconstructive Orthopedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019).

containing marijuana, money, and a pack of cigarettes. "Shortly after the robbery, the police located the plastic jar about two blocks away from the victim's apartment. Also located next to the jar by Coatesville police officers was a black t-shirt. Subsequent testing revealed the presence of co-defendant Dominique Lee's [Plaintiff's half brother and roommate] thumbprint on the jar, and [Plaintiff's] DNA on the t-shirt." *See*, Complaint, ¶15. Plaintiff and Lee were subsequently arrested.

### The Criminal Charges and Jury Trial

Chester County Detective Dutter was the lead detective assigned to investigate, and, with the direction and approval of the District Attorney's Office, filed the criminal charges against Plaintiff. *See*, Exhibit A as attached to Defendants' Answer (ECF 12-1) and present Motion, at p. 000400. The affidavit and criminal complaint were thereafter submitted to a District Magisterial Justice who determined that there was probable cause for the charges and issued an arrest warrant for Plaintiff. *Id.,* at pp. 00396-00408. There is no assertion in the Complaint, nor was it alleged in any of Plaintiff's multiple appeals before the Pennsylvania and Federal Courts after he was convicted by a jury, that anything contained in the Affidavit was false.  Likewise, there is no assertion in the Complaint of any such falsehoods.

Plaintiff was prosecuted by the Chester County District Attorney's Office and represented by able private counsel at his 2014 trial. Plaintiff was convicted by a jury of second-degree murder, robbery, burglary, conspiracy to commit robbery and conspiracy to commit burglary in 2014 in the Court of Common Pleas of Chester County.

### Plaintiff's Appeals

#### Pennsylvania Superior Court

Plaintiff appealed his conviction to the Superior Court of Pennsylvania. Plaintiff made no allegation that there was any misconduct by Detective Dutter or anyone else involved in the investigation such as withholding items, manipulating witness testimony or presenting false evidence. Rather, the grounds for appeal all related to rulings by the trial court and arguments by the ADA which all appellate courts found were not improper or were harmless error, and the sufficiency of the evidence for the jury to have convicted Plaintiff. The Pennsylvania Superior Court denied Plaintiff's appeal and upheld his jury conviction. *See, Commonwealth v. Rayner*, 153 A.3d 1049 (Pa. Super. Ct. 2016) (Attached as Exhibit "B" to Answer (ECF 12-2) and present Motion).

#### Eastern District of Pennsylvania – Magistrate Judge Henry Perkin

After his state court appeals were exhausted, Plaintiff filed a petition for a writ of *habeas corpus* with the Eastern District of Pennsylvania. As with his Pennsylvania Superior Court appeal, the grounds for appeal all related to rulings by the trial court and arguments by the ADA which Magistrate Perkin found were not improper or were harmless error, and the sufficiency of the evidence for the jury to have convicted Plaintiff. No allegations were made that Detective Dutter or anyone else involved in the investigation did anything wrong. The Honorable Henry Perkins issued a Report and Recommendation that Plaintiff's petition for a writ of *habeas corpus* be denied and his jury conviction upheld. *Rayner v. Overmyer*, No. 18-4909, 2021 U.S. Dist. LEXIS 226702 (E.D. Pa. Sep. 1, 2021)( (Attached as Exhibit "C" to Answer (ECF 12-3) and present Motion).

### Eastern District of Pennsylvania – Judge John Gallagher

The Honorable John Gallagher of This Court accepted Magistrate Judge Perkin's recommendation, denied Plaintiff's petition for a writ of *habeas corpus*, and upheld his jury conviction. *Rayner v. Overmyer*, No. 2:18-cv-04909-JMG, 2021 U.S. Dist. LEXIS 225556 (E.D. Pa. Nov. 22, 2021) (Attached as Exhibit "D" to Answer (ECF 12-4) and present Motion). As with the two prior appellate reviews, Plaintiff neither alleged that Detective Dutter did anything wrong, nor did the reviewing Court find any wrongdoing by Detective Dutter.

### Third Circuit Court of Appeals

The Third Circuit Court of Appeals next heard Plaintiff's appeal and again, Plaintiff did not allege any wrongdoing by Detective Dutter, nor was any found by the Third Circuit. Rather, while the Court found that it was a reasonable inference (for Detective Dutter, the prosecuting Assistant District Attorney and the jury) to believe that the t-shirt found containing Plaintiff's DNA was worn by one of the perpetrators of the murder, the Court nevertheless determined that there was insufficient evidence presented at the criminal trial "to support a finding of guilt beyond a reasonable doubt." *See Rayner v. Superintendent Forest SCI*, No. 21-3230, 2023 U.S. App. LEXIS 2526, at *2 (3rd Cir. Feb. 1, 2023) (Attached as Exhibit "E" to Answer (ECF 12-5) and present Motion).

In sum, over the course of almost ten (10) years, which included a trial and at least four (4) appeals, neither Plaintiff, nor any of his many capable lawyers who had the complete underlying criminal files, ever alleged that Detective Dutter did anything wrong. Likewise, Plaintiff did not challenge or raise at any of his prior appeals, nor does he allege in his Complaint, that there was insufficient probable cause for the charges to be filed. Plaintiff likewise does not allege that the affidavit of probable cause and criminal complaint that were

filed, reviewed and approved by a neutral Judge, establishing that probable cause existed, was in any way defective or deficient. Rather, the basis of Plaintiff's claim is that since the Third Circuit found that there was not sufficient evidence "to support a finding of guilt beyond a reasonable doubt" he, *a fortiori,* has a viable §1983 claim. Plaintiff is wrong. As noted by the Supreme Court in *Baker v. McCollan*, "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." 443 U.S. 137, 145 (1979). Rather, the seminal issue that Plaintiff must allege and establish in order to set forth a viable claim is 'the absence of probable cause' which, as discussed herein, Plaintiff's Complaint does not even allege, nor could it be truthfully alleged, given the underlying record.

### III.   PROCEDURAL HISTORY

Plaintiff initiated this lawsuit by filing the present Complaint on December 29, 2023 (ECF 1). Defendants filed their Answer on February 9, 2024 (ECF 12).

### IV.   STATEMENT OF QUESTIONS PRESENTED

Should Plaintiff's Complaint be dismissed for failure to state a viable claim for relief?

Suggested Answer: Yes

### V.   STANDARD OF REVIEW

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The standard used in deciding a Motion for Judgment on the Pleadings is identical to the standard of review under Rule 12(b)(6). *Miller v. Reading Police Dep't*, No. 18-5178, 2019 U.S. Dist. LEXIS 99702, at *3-4 (E.D. Pa. June 13, 2019) (Schmehl, J.). "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written

instruments attached to the pleadings." *Phillips v. Transunion, LLC*, 2012 U.S. Dist. LEXIS 58750, at *3 (E.D. Pa. April 25, 2012). As stated above, it is further well-established that on a 12(c) Motion for Judgment on the Pleadings, The Court may consider matters of public record. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), *see also Wolfington v. Reconstructive Orthopedic Assocs. II PC*, 935 F.3d 187, 197 (3d Cir. 2019).

As with a motion to dismiss under Rule 12(b)(6), to survive a Motion for Judgment on the Pleadings, a complaint must contain factually plausible averments that the alleged wrongdoing occurred and that there is "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint that fails to present factually plausible claims or which presents claims that are foreclosed as a matter of law should be dismissed. *Id.* at 678.

In deciding whether to grant or deny a motion to dismiss (or a Motion for Judgment on the Pleadings) the United States Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and footnote omitted); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Defendants submit that this same standard would apply at for a Motion for Judgment on the Pleadings, especially when Defendants are asserting as here, that the complaint fails to plead a viable claim. A complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The *Iqbal* Court highlights two (2) principles for the purposes of the present motion which the Supreme Court reinforced its decision in *Twombly*. First, courts must accept as true all factual allegations set forth in the complaint but are not bound to accept as true any legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, a complaint will only survive a threshold motion if it states a plausible claim for relief, which requires a court to engage in a context-specific analysis, drawing on the court's judicial experience and common sense. *Iqbal*, 556 U.S. at 679; *Fowler*, 578 F.3d at 211. Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown, that the complainant is entitled to relief. *Iqbal*. 556 U.S. at 679.

## VI.   ARGUMENT

As set forth below, all of Plaintiff's claims fail as a matter of law and must be dismissed. This includes Plaintiff's Federal claims for malicious prosecution (Count I); denial of a fair trial (Count II); municipal liability (Count III); and civil rights conspiracy (Count IV); and plaintiff's (unidentified) state claims (Count V).

### A.   PLAINTIFF'S FEDERAL CLAIMS FAIL

#### 1.   Plaintiff's Malicious Prosecution Claim (Count I) Fails

"Whether raised under Section 1983 or state law, claims for false arrest, malicious prosecution, and abuse of process require a lack of probable cause." *Shilling v. Brush*, 2007 U.S. Dist. LEXIS 4330, *1, *26 (M.D. Pa. Jan. 22, 2007) (Jones, J.) (quoting *Frederick v. Hanna*, 2006 U.S. Dist. LEXIS 87037, at *30 (W.D. Pa. Dec. 1, 2006)); *see Groman v. Township of*

*Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) (explaining that, in order to prevail on a claim for unlawful arrest pursuant to § 1983, a plaintiff must prove that the police arrested him without probable cause).

In order to sustain a federal malicious prosecution claim under § 1983, Plaintiff must show that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009); *Dowling*, 855 F.3d at 141 ("The proper inquiry in a § 1983 claim based on false arrest or misuse of the criminal process is not whether the person arrested in fact committed the offense, but whether the arresting officer had probable cause to believe that the person arrested had committed the offense.")

Probable cause exists if the facts and circumstances which are within the knowledge of the police, and of which the police have reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that a suspect has committed a crime. *See, e.g.*, *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The facts must support a reasonable belief that "there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000).

"Where a plaintiff has been arrested pursuant to a warrant, he may only succeed in a false arrest claim by showing the following: "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to

the finding of probable cause.'" *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir.

2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).

The Supreme Court opined in *Messerschmidt v. Millender* that:

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.' *United States v. Leon*, 468 U.S. 897, 922-923 (1984)."

*Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012).

The Supreme Court further explained that although this general rule can be excepted, the

exception is a high bar to meet, namely that Plaintiff prove:

"'[I]t is obvious that no reasonably competent officer would have concluded that a warrant should issue.' *Malley* [ *v. Briggs*] 475 U.S. [335], 341. The 'shield of immunity' otherwise conferred by the warrant, 475 U.S., at 345, will be lost, for example, where the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' *Leon*, 468 U.S., at 923."

*Messerschmidt*, 565 U.S. at 547-48.

The *Messerschmidt* Court continued,

"Our precedents make clear, however, that the threshold for establishing this exception is a high one, and it should be. As we explained in *Leon*, '[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination' because '[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.' *Id.*, at 921; *see also Malley*, 475 U.S., at 346, n. 9, ('It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable.'"

*Messerschmidt 565 U.S.*, at 547-48.

Furthermore, This Court opined in 2020:

"'[A] district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to [the plaintiff], reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly.' [*Merkle v.*

*Upper Darby Sch. Dist.*, 211 F.3d 782,] 788-89 [3d Cir. 2000)] (*quoting Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). 'A court must look at the 'totality of the circumstances' and use a 'common sense' approach to the issue of probable cause.' *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007), (*quoting United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984), *cert. denied*, 471 U.S. 1018, (1985))."

*Leary v. Cook*, No. 18-4347, 2020 U.S. Dist. LEXIS 83133, at *25 (E.D. Pa. May 12, 2020).

In his Complaint, Plaintiff not only fails to note that he was arrested pursuant to a judicially reviewed and approved warrant, but he fails to plead what information or facts contained within it were "knowingly and deliberately" false. Instead. Plaintiff only has a single boilerplate assertion in paragraph 59, which the Supreme Court in *Iqbal* and *Twombly* would consider to be "labels and conclusions, and a formulaic recitation of the elements of a cause of action [that] will not do." *Twombly,* at 555. In short, since Plaintiff was arrested pursuant to an arrest warrant, which necessarily means that the reviewing Judge found that probable cause existed, and Plaintiff does not challenge the warrant – nor did he in any of his multiple appeals over the almost ten (10) years, his claims against Detective Dutter fail a matter of law.

## 2. **Plaintiff's 'Denial Of A Fair Trial' Claim (Count II) Fails**

As stated by *Iqbal*, Plaintiff bears the burden of establishing, in his Complaint, facts sufficient to find a basis for the allegations he makes. Here, Plaintiff fails to allege how Defendant Detective Dutter, who was merely the charging officer, and had no control over Plaintiff's criminal trial, 'denied a fair trial' to Plaintiff.

If this Count is just a re-labeling of Count I – Malicious Prosecution - it fails for the same reasons as discussed above.

If Plaintiff avers that his trial was "unfair" because Detective Dutter fabricated and suppressed evidence, it would be the first time Plaintiff has alleged this and the 'boilerplate' assertions fall far short of which is required under *Iqbal* and *Twombly*. It would also be contrary

to every other filing Plaintiff has made regarding his trial, as all prior filings blamed the alleged 'unfair trial' on the prosecutor and trial judge – allegations that every court that Plaintiff raised this before, has rejected.

In addition, under the specific provision rule, "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7, (1997).

The standards and procedures for *arrest and detention* are derived from the Fourth Amendment and its common-law antecedents. *Gerstein v. Pugh*, 420 U.S. 103 (1975). In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court again did not recognize a substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause.

Most recently, the Supreme Court in *Manual v. City of Joliet*, 137 S. Ct. 911 (2017), reiterated that a claim to contest the legality of an arrest and pretrial confinement is made under the Fourth, not the Fourteenth, Amendment. In *Manual*, the plaintiff was detained and searched where pills were found. Field testing did not result in the pills being positive for illegal drugs. Plaintiff was arrested and taken to the police station. An evidence technician also tested the pills found on the plaintiff. They again tested negative for illegal drugs. Despite this, the Plaintiff was arrested and charged with possession of a controlled substance after an officer swore to a complaint that one (1) of the pills was ecstasy. Plaintiff spent forty-eight (48) days in jail before a laboratory confirmed that the pills were not ecstasy. The Supreme Court held that the Fourth Amendment is the proper vehicle for challenging an arrest and detention for lack of probable cause.

The Third Circuit recently dismissed the same alleged claim that Plaintiff has filed here under the Fourteenth Amendment. In *Delade v. Cargan*, 972 F.3d 207 (3rd Cir. 2020), the plaintiff averred that he was arrested and detained based on fabricated evidence and filed both a Fourth and Fourteenth Amendment claim. The court, relying on *Manual* held that the Fourth, not the Fourteenth Amendment is the proper vehicle to challenge an arrest and detention. In fact, in *Delade*, the Third Circuit held, "we have not delineated when a claim of unlawful pretrial detention  stops implicating the Fourth Amendment and begins to fall under the Due Process Clause of the Fourteenth Amendment." *Id* at 212-213.

However, in *Black v. Montgomery County*, 835 F.3d 358 (3rd Cir. 2016), the Third Circuit held that an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged. However, the Third Circuit also opined that disputed evidence or even incorrect testimony "should not be treated as fabricated, merely because it turns out to have been wrong." *Id.,* at 32. Instead, there must be "persuasive evidence supporting a conclusion that the proponent of the evidence is aware the evidence is incorrect or that the evidence is offered in bad faith. *Id.*, citing *Halsey v. Pfeiffer*, 750 F.3d 273 (3rd Cir. 2014).

Here, Plaintiff's claim is more appropriately brought under the more specific Fourth Amendment claim as in *Delade* and *Manual*. If so, it is filed well past the two (2) years statute of limitations which runs for a false arrest claim from the date of the arrest. According to This Court:

> "[C]laims for false arrest and false imprisonment under Pennsylvania law are subject to a two-year statute of limitations. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009); *see also Wallace v. Kato*, 549 U.S. 384, 387-89 (2007) (concluding that false arrest claims mature at the time of the arrest and false imprisonment claims mature when the illegal

imprisonment ends; and looking to state law for the applicable limitations period); 42 Pa. Cons. Stat. § 5524 (providing a two-year statute of limitations)."

*Royal v. Macy's Corp.*, No. 21-4439, 2022 U.S. Dist. LEXIS 85786, at *4 (E.D. Pa. May 11, 2022). Thus, Count II is time-barred.

Further, even assuming *arguendo,* that the Plaintiff could proceed under a Fourteenth Amendment substantive due process fabrication of evidence claim, Plaintiff has not alleged any facts that, absent the boilerplate alleged fabricated evidence assertions, Plaintiff would not have been charged.

Therefore, for any one of several reasons, Count II of Plaintiff's Complaint must be dismissed.

### 3. <u>Detective Dutter Is Afforded Qualified Immunity</u>

Even assuming *arguendo* that this Court finds that Plaintiff has pled a viable claim that Detective Dutter violated the Plaintiff's constitutional rights, Detective Dutter should nonetheless be afforded qualified immunity.

Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The defense of qualified immunity shields government officials from liability whenever "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McGreevy v. Stoup*, 413 F.3d 359, 364 (3d. Cir. 2005) (quoting, *Harlow v Fitzgerald*, 457 U.S. 818 (1982)). Qualified immunity is a question of law for the Court to decide early in the litigation process. *Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996), *cert. denied Riccardi v. Grant*, 532 U.S. 919 (2001). The Supreme Court has repeatedly stressed the importance of resolving qualified immunity at the earliest stage of the litigation to spare public officials of the burdens of litigation and trial. *Curly v. Klem*, 298 F.3d 271, 277 (3d Cir.2002),

(*citing Saucier*, 121 S.Ct. at 2156; *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*);

*Anderson v. Creighton*, 483 U.S. 635, 646, n. 6 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).

In *Curly*, the Third Circuit discussed the two-step inquiry that courts must undertake in

determining whether a government official is entitled to qualified immunity. "First, the court

must decide whether the facts alleged show the officer's conduct violated a constitutional right."

*Cox v. Hackett*, 2006 U.S. Dist. LEXUS 11820 at *8 (E.D. Pa. J. Baylson) *citing Curly v. Klem*,

298 F.3d 271 (3d Cir. 2002); *citing Saucier*, 533 U.S. at 201-02). "If the facts, when viewed in

the light most favorable to the plaintiff, do not show that the officer violated a constitutional

right, then plaintiff's § 1983 claim must fail. *Id*. Second, the court must ask whether the right

was clearly established at the time he acted. "Clearly established" in this context means "it would

be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.

In fact, the Supreme Court in *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2084 (U.S. 2011), held that an

official's conduct violates clearly established law when, at the time of the challenged conduct,

the contours of the right are so sufficiently clear that "every reasonable official would have

understood that what he is doing violates that right." (emphasis added). Moreover, [as the Court

in *Saucier*] noted, "this inquiry ... must be undertaken in light of the specific context of the case,

not as a broad general proposition. If a court concludes that an officer's conduct did violate a

clearly established constitutional right, then it must deny him the protection afforded by qualified

immunity." *Curly v. Klem*, 298 F.3d 271 (3d Cir. 2002).

With regard to this second inquiry, "the ultimate issue is whether, despite the absence of

a case applying established principles to the same facts, reasonable officials in the defendants'

position at the relevant time could have believed, in light of what was in the decided case law,

that their conduct would be lawful. Second, even where the officials clearly should have been aware of the governing legal principles, they are nevertheless entitled to immunity if based on the information available to them they could have believed their conduct would be consistent with those principles." *Good v. Dauphin County Children and Youth Services*, 891 F.2d 1087, 1093 (1989). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S.Ct. 3 (2013) (*per curiam*). The Supreme Court stressed in *White v. Pauly*, 137 S. Ct. 538 (2017), that it was "again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" The Court opined that if the specificity to the facts of the case is not enforced, "plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." (*citing Anderson v. Creighton*, 483 U. S. 635, 639 (1987)).

It was not clearly established at the time of the incident that filing charges against a person, with the review and approval of the District Attorney's Office, and through a signed warrant by the Magisterial District Court who likewise reviewed the charges and determined that probable cause existed, was constitutionally impermissible. More specifically, a reasonable officer in Detective Dutter's position would not have known that filing charges against someone with the approval of the District Attorney's Office has the effect of depriving someone of a constitutional right. *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d. Cir. 2001), *cert denied*, 535 U.S. 989 (2002).

> As the United States Court of Appeals for the Third Circuit has instructed:
>
> "[A] police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified

> immunity from Fourth Amendment claims premised on a lack of probable cause. That reliance must itself be objectively reasonable, however, because 'a wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one.' *Cox v. Hainey*, 391 F.3d 25, 34 (1st Cir. 2004) Accordingly, a plaintiff may rebut this presumption by showing that, under all the factual and legal circumstances surrounding the arrest, a reasonable officer would not have relied on the prosecutor's advice."

*Kelly v. Borough of Carlisle*, 622 F.3d 248, 256 (3d Cir. 2010.

The recognition by the Third Circuit in *Kelly* – that an officer, who reasonably relies on the legal advice of the prosecutor, and acts in accordance with that advice, ought to be afforded qualified immunity – is in accord with numerous other courts that have held that if a police officer seeks the legal counsel and approval of a prosecutor prior to taking action, then the officer should be afforded immunity if he follows the prosecutor's advice. *See, e.g., Poluakis v. Rogers*, 2009 U.S. App. LEXIS 17714 (11th Cir. Aug. 10, 2009) (unpublished); *Ginter v. Skahill*, 2008 U.S. App. LEXIS 24635 (3d Cir. Oct. 28, 2008) (unpublished); *Gray v. City of Los Angeles,* 2008 U.S. App. LEXIS 4240 at *3 (9th Cir. Feb. 13, 2008); *Cox v. Hainey*, 391 F.3d 25, 35-36 (1st Cir. 2004); *Frye v. Kansas City Missouri Police Dep't*, 375 F.3d 785, 792 (8th Cir. 2004); *Hollingsworth v. Hill*, 110 F.3d 733, 741 (10th Cir. 1997); *Ortiz v. Van Auken*, 887 F.2d 1366, 1371 (9th Cir. 1989); *Hernandez v. Washoe*, 2009 U.S. Dist. LEXIS 4847 at *7- *8 (D. Nev. Jan. 23, 2009); *Lojas v. Washington*, 2008 U.S. Dist. LEXIS 32940 at *18-*19 (E.D. Wash. Apr. 22, 2008).

Even after the investigation and approval by the Deputy District Attorney, the affidavit and criminal complaint prepared by Detective Dutter was reviewed, approved and signed by The Honorable Magisterial District Judge Lori Novak Donatelli finding that probable cause existed to warrant that charges be approved. The Eastern District has pointed to a magisterial district judge having approved an Affidavit of Probable Cause and Criminal Complaint as a buttressing factor

to their determination that officers had probable cause to arrest an individual. *Sheriff v. Hale*,

2016 U.S. Dist. LEXIS 104557, at \*23 (E.D. Pa. Aug. 8, 2016).

Therefore, not only did Detective Dutter's investigation support his probable cause

determination, but the Deputy District Attorney and the Magisterial District Judge also

determined that there was probable cause to arrest the Plaintiff. Thus, in accordance with the

standard set forth by the Supreme Court in *al-Kidd*, and the Third Circuit's pronouncement in

*Kelly*, Detective Dutter must be afforded qualified immunity for all claims asserted against him.

### 4.  **Plaintiff's Derivative Monell Claim (Count III) Fails**

Plaintiff fails to state a viable claim pursuant to *Monell* against the County for two (2)

separate reasons as discussed below.

First, in order to establish a *Monell* claim against a municipality, Plaintiff must first

establish a constitutional violation against one of its employees.  It is well-settled that if there

was no violation in the first place, then there can be no derivative municipal liability claim.  *See,*

*e.g., Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Since as above, Plaintiff has failed to

assert a viable underlying constitutional violation, Plaintiff's derivative *Monell* claim fails.

Second, the Supreme Court established that public entities may be liable for

constitutional violations under 42 U.S.C. § 1983 where "execution of a government's policy of

custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to

represent official policy, inflicts injury." *Monell*, 436 U.S. at 694. "That is, a municipality is

subject to Section 1983 liability to the extent it maintained an unconstitutional custom or policy

that caused the constitutional violations alleged by the claimant but is not liable for injuries on

the sole basis that they were inflicted by its employees." *Thomas v. Harrisburg City Police*

*Dep't*, 2021 U.S. Dist. LEXIS 32938 *22-*23 (M.D. Pa. Feb. 23, 2021) (Kane, J.) (*citing*, *Monell*, 436 U.S. at 694).

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'" *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (*quoting*, *Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997). A plaintiff must show "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." *Id*., at 385.

Failure to properly train employees can create a custom or policy for purposes of Section 1983 liability, if such failure is tantamount to "deliberate indifference to the constitutional rights of person with whom the police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Thus, "not all failures or lapses in training will support liability under § 1983." *Woloszyn v. County of Lawrence*, 2005 U.S. App. LEXIS 1417, *1 at *27-*28 (3d Cir. Jan. 28, 2005).

To establish deliberate indifference, a plaintiff must have proof of "a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead*, 381 F.3d 235, 234 (3d Cir. 2004). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (*quoting*, *Bd. Of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409). More specifically, a plaintiff must set forth "a **pattern** of **prior** incidents or **knowledge of similar violations** of constitutional rights and **failed to take adequate measures** to ensure the particular right in question." *Cacciatore v. City of*

*Phila.*, 2005 U.S. Dist. LEXIS 19064, *1, *6 (E.D. Pa. Sept. 1, 2005) (quoting, *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001)) (emphasis added). *See also*, *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Plaintiff's *Monell* claim against the County consists of a series of boilerplate allegations in paragraphs 36-52 and 72-75, and a citation to single case in paragraphs 47-50 – *Brison v. Tester*, Civil Action No. 94-2256, 1994 U.S. Dist. LEXIS 18193 (E.D. Pa. Dec. 20, 1994) - which occurred in 1990, twenty-four (24) years before Plaintiff's conviction, and thirty-three (33) years prior to Plaintiff initiating this suit - that Plaintiff alleges shows that Chester County was aware of that its officials violated another criminal defendant's right. This falls short of the pattern of similar violations that is required for a viable legal claim.

First, a single case, with no intervening or additional examples of violations that would put the County on notice of a systemic problem does not constitute a "pattern" that the law requires. "A custom cannot be proven by evidence of 'a **single incident** of unconstitutional activity.' *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ("[C]onsiderably more proof than the single incident will be necessary in every case to establish . . . the requisite fault on the part of the municipality.')." *Reilly v. City of Harrisburg*, No. 22-1795, 2023 U.S. App. LEXIS 17259, at *5 (3d Cir. July 10, 2023)

Second, *Brison* - the single case that Plaintiff cites to support his *Monell* 'pattern' claim - did not result in a finding that any County official behaved badly or violated any Constitutional rights. To the contrary, as detailed in the opinions the Honorable William H. Yohn, Jr. of This Court, all claims asserted against all Chester County Defendants in *Brison* were dismissed by way of a Motion to Dismiss (*Brison v. Tester*, Civil Action No. 94-2256, 1994 U.S. Dist. LEXIS 18193 (E.D. Pa. Dec. 20, 1994)) and Motion for Summary Judgment,

which combined to find that the named County Detectives, ADAs, Commissioners and County did not violate Brison's constitutional rights[2]. *See*, (Attached as Exhibits F and G to Answer (ECF 12-6 and 12-7) and the present Motion).

In short, Plaintiff's *Monell* claim as pled in the Complaint amounts to nothing more than conclusory boilerplate allegations, with no instances – much less a series of supportive instances - on which This Court can rely to suggest that the County had prior knowledge that there was a *pattern* of similar instances prior to the present arrest, for which the County knowingly failed remedy. This fails under *Iqbal* and *Twombly,* and Plaintiff's *Monell* claim must be dismissed.

### 5. **Plaintiff's Derivative Conspiracy Claim (Count IV) Fails**

Claims under civil rights conspiracy statute must be pled with factual specificity; mere conclusory allegations that conspiracy existed will not survive motion to dismiss. *Rogers v. Mount Union Borough*, 816 F.Supp. 308 (M. D. Pa.1993). *See*, *Musila v. Lock Haven University*, 970 F.Supp.2d 384 (M.D. Pa. 2013) (A tenured professor at state university failed to allege any facts, simply asserted legal conclusions that a conspiracy existed, therefore, his claims were dismissed at a motion to dismiss stage). Plaintiffs must allege proof of (1) an actual violation of a right protected under section 1983 and (2) actions taken in concert by defendants with the specific intent to violate the right protected under §1983.

First, as discussed above, since there was no violation in the first instance, there can be no resulting conspiracy.

Second, the Complaint contains only conclusory allegations of a conspiracy which is legally insufficient to set forth a viable claim. For example, in *Dennis v. DeJong,* 867 F.Supp.2d 588 (E.D. of Pa. 2011), the Court dismissed the plaintiff's conspiracy claim for lack of evidence

---

[2] Claims against two co-defendants in *Brison* - local police officers from Oxford Borough - survived summary judgment.

showing specific intent.  In *Dennis*, plaintiff alleged a conspiracy to get a plaintiff/father arrested for alleged abuse of his child because of his race. To support the claim, he showed the existence of phone calls between the defendant childcare workers, defendant district attorney and defendant police officers with regard to the investigation and lack of police response into the allegations of abuse against the child. The plaintiff/father was ultimately arrested for the abuse. The Court concluded that there were no facts alleged which demonstrated any agreement to harm the plaintiff, or that defendants were acting improperly or conspiring with each other when discussing the abuse and the investigation which led to plaintiff's arrest.

Here, Plaintiff has set forth no evidence of a conspiracy beyond boilerplate allegations which falls short of what required to plead a viable claim.

### B.  <u>PLAINTIFF'S STATE LAW CLAIM (COUNT V) FAILS</u>

Plaintiff asserts a 'state law claim' in Count V, although it is unclear what claim(s) are being asserted and against whom – just Detective Dutter or also the County?  If Plaintiff intends to assert a false arrest claim, such a claim would be barred under the Pennsylvania Tort Claims, 42 Pa.C.S.A. §8541 et seq. as such claim does not fit under any of the nine (9) exceptions to immunity set forth at §8542(b). If there is a different claim asserted, it is not plead with any clarity, much less the sufficient level of detail that is required under *Iqbal* and *Twombly* and as such, this count must be dismissed.

### VI.  <u>CONCLUSION</u>

Accordingly, for the reasons set forth above, Defendants respectfully request that This Honorable Court grant their Motion for Judgment on the Pleadings, pursuant to Fed. R. Civ. P. 12(c), and dismiss Plaintiff's Complaint with prejudice.

Dated:  February 12, 2024                    Respectfully submitted,

**LEWIS BRISBOIS**                           **MacMAIN LEINHAUSER PC**

*/s/ Michael B. Pullano*                     */s/ David J. MacMain*
Michael B. Pullano, Esquire                  David J. MacMain, Esquire
Joseph F. Kampherstein, III, Esquire         Jamison C. MacMain, Esquire
Attorney I.D. Nos. 79389/88384               Attorney I.D. Nos. 59320/334149
550 E. Swedesford Rd. Suite 270              433 W. Market Street, Suite 200
Wayne, PA 19087                              West Chester, PA 19317
*Attorneys for Defendants*                   *Attorneys for Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I, David J. MacMain, Esquire, hereby certify that on this 12th day of February, 2024, the

foregoing was filed electronically and is available for viewing and downloading from the ECF

system of the United States District Court for the Eastern District of Pennsylvania.  The

following party received notification of this filing via electronic notification:

Joel Feller, Esquire
Kevin Harden, Jr., Esquire
Ross Feller Casey LLP
One Liberty Place
1650 Market Street Suite 3450
Philadelphia
Philadelphia, PA 19103
*Attorneys for Plaintiff*

Michael B. Pullano, Esquire
Joseph F. Kampherstein, III, Esquire
Lewis Brisbois Bisgaard & Smith LLP
550 E. Swedesford Rd. Suite 270
Wayne, PA 19087
*Attorneys for Defendants*

**MacMAIN LEINHAUSER PC**

By:     */s/ David J. MacMain*
David J. MacMain
Jamison C. MacMain
Attorney I.D. Nos. 59320/334149
433 W. Market Street, Suite 200
West Chester, PA 19382
*Attorney for Defendants*